**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**UNITED STATES OF AMERICA**

**v.**                                                                   **Case No. 3:03cr212**

**ALEXANDER JAMES HARDNETT,**

      **Defendant.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant Alexander Hardnett's Motion to Reduce Sentence Pursuant to the First Step Act of 2018 (the "Motion"). (ECF No. 335.) Hardnett asserts that the First Step Act entitles him to relief because he committed a covered offense before August 3, 2010. (Mot. 1–3.) The United States responded, asserting that the First Step Act does not afford Hardnett relief "because the quantity of crack cocaine for which he was responsible satisfies the increased threshold in the Fair Sentencing Act" (the "Opposition"). (Opp'n 1, ECF No. 336.) Hardnett replied. (ECF No. 337.) The United States filed a sur-reply, (ECF No. 340), and a Motion for Leave to File Sur-Reply 19 Minutes Out of Time, (ECF No. 343). These matters are ripe for disposition. For the reasons articulated below, the Court will grant the Motion for Leave to File Sur-Reply 19 Minutes Out of Time and grant in part and deny in part the Motion.

## I. Background

On June 16, 2003, a Grand Jury indicted Hardnett and five others in a twenty-three-count indictment, charging them with various offenses related to a conspiracy to distribute crack cocaine in the Eastern District of Virginia. (PSR ¶ 1, ECF No. 334-1.) Within that indictment, the Grand Jury listed Hardnett in seven counts. The Court later dismissed on the United States' motions three of the seven counts that Hardnett faced. (ECF Nos. 76, 92.) Hardnett proceeded

to trial on the four remaining counts: conspiracy to possess with intent to distribute 50 grams or more of cocaine base (Count One); possession with intent to distribute more than 500 grams of a mixture containing cocaine hydrochloride (Count Three); possession with intent to distribute more than 50 grams of cocaine base (Count Five); and possession with intent to "distribute a quantity of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(C), which contained a detectable amount of cocaine base, commonly known as 'crack,' a Schedule II narcotic controlled substance," (Count Six). (Indictment, ECF No. 17.)

Pursuant to 21 U.S.C. § 851,[1] the government filed an information charging Hardnett with a prior drug conviction.[2] (ECF No. 58.) The prior conviction raised Hardnett's mandatory minimum sentence for Count One from 120 months to 240 months. After a bench trial, the Court found Hardnett not guilty of Counts Three and Five and guilty of Counts One and Six.

Following these convictions, a United States Probation Officer prepared a presentence report ("PSR") to help the Court determine the appropriate sentence. The PSR stated that the

---

[1] A Section 851 enhancement increases the penalty that Courts must impose on a drug offender who has a previous conviction for a felony drug offense. *See* 21 U.S.C. §§ 841, 851. To receive the enhanced penalty, the United States must file before sentencing an information pursuant to § 851. The information consists of a document, similar to an indictment, alleging that the defendant has certain qualifying prior convictions. One court has called this § 851 enhancement "a uniquely powerful prosecutorial cudgel: it allows the Government, at its sole discretion, to file an additional charge by information that a defendant has been previously convicted of a drug trafficking offense thereby ratcheting up the mandatory minimum applicable from 5 to 10 years, or 10 to 20 years, or 20 years to life." *United States v. Pierre*, 372 F. Supp. 3d 17, 20 n.1 (D.R.I. 2019). And this "staggering" increase must be imposed by the Court when the prosecution files the 851 enhancement. Sarah French Russell, *Rethinking Recidivist Enhancements: The Role of Prior Drug Convictions in Federal Sentencing*, 43 U.C. DAVIS L. REV. 1135, 1163 (2010) ("If a prosecutor seeks the 851 enhancement, the judge must apply it.").

The use of this enhancement varies, to a troubling degree, by administration. The *Pierre* Court observed that "during the administration of Attorney General Ashcroft, local U.S. Attorney's Offices were directed as a matter of policy to charge the offense that would generate the most substantial sentence under the Sentencing Guidelines and were strongly encouraged to use statutory enhancements, including under § 851, in all appropriate cases." *Pierre*, 372 F. Supp. 3d at 20 n.1 (quoting Mem. from Att'y Gen. John Ashcroft Setting Forth Justice Dep't Charging and Plea Policies (Sept. 22, 2003), reprinted in 16 Fed. Sent. R. 129 (Dec. 1, 2003)). The *Pierre* Court continued by noting that "[s]ince around 2008, in this Court's experience, the use of the § 851 cudgel has been mercifully rare." 372 F. Supp. 3d at 20 n.1. A 2018 United States Sentencing Commission Report similarly reported that § 851 enhancements were inconsistently applied, adding that it appeared to be more frequently invoked against African American offenders. U.S. SENTENCING COMMISSION APPLICATION & IMPACT OF 21 U.S.C. § 851: ENHANCED PENALTIES FOR FEDERAL DRUG TRAFFICKING OFFENDERS, (2018), *Report-At-A-Glance*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-851-mm.pdf.

[2] For the § 851 enhancement, the PSR stated that Hardnett was "convicted on June 22, 1993, of Attempted Criminal Possession of a Controlled Substance Third Degree in the Supreme Court for Queens County, New York." (PSR ¶ 19.) Hardnett committed that crime shortly after his eighteenth birthday—more than ten years prior to the underlying 2003 federal case. (PSR ¶ 47.) That offense constituted his only prior felony.

United States "recommended that [Hardnett] be held accountable for distributing in excess of 1.5 kilograms of cocaine base between late 1998 and December 2002." (PSR ¶ 32.) The PSR calculated for Hardnett an Offense Level of 46 and Criminal History Category VI. To make this calculation, the PSR used offense level 38 based on a drug weight in excess of 1.5 kilograms. (PSR Wkst. C); *see also* U.S. Sentencing Guidelines Manual §§ 2D1.1(a)(3), (c)(1), (c)(4) (U.S. Sentencing Comm'n 2003) ("USSG") (specifying base offense levels in drug quantity table).[3] The PSR then added two offense levels for possession of a firearm, four levels for a supervisory role in the offense, and two levels for obstruction of justice, which resulted in an adjusted offense level of 46. (PSR ¶¶ 109–11, Wkst. C.)

At sentencing on February 12, 2004, the Court made findings with respect to Hardnett's possession of a firearm, obstruction of justice, and supervisory role in the conspiracy, and adopted the PSR. (Sent. Tr. 9–10, ECF No. 336-1.) These findings increased Hardnett's offense level from 32 (based on the conviction for conspiracy to distribute 50 grams or more of crack cocaine), resulting in a recommendation for a life sentence. The Court sentenced Hardnett to the mandatory term of life on Count One and 360 months (30 years) on Count Six, to run concurrently. (Sent. Tr. 12, ECF No. 336-1.) The Court further imposed a supervised release term of ten years for Count One and six years for Count Six, to run concurrently. (*Id.*)

Hardnett appealed. (ECF No. 130.) The United States Court of Appeals for the Fourth Circuit vacated Hardnett's sentence after finding that it violated "the rule announced in *United States v. Booker*, 543 U.S. 220 (2005)," which the Supreme Court of the United States decided

---

[3] Based on the drug weight specified in the indictment (50 grams of cocaine base), the 2003 Guidelines placed Hardnett's base offense level at 32. USSG § 2D1.1(c)(4) (2003) (identifying offense level 32 for "[a]t least 50 G but less than 150 G of Cocaine Base"). Based on the drug weight specified in the PSR (1.5 kilograms of cocaine base), the 2003 Guidelines identified Hardnett's base offense level as 38. USSG § 2D1.1(c)(1) (2003) (identifying offense level 38 for "1.5KG or more of Cocaine Base").

after Hardnett's initial sentencing hearing.  *United States v. Hardnett*, 124 F. App'x 767, 768 (4th Cir. 2005).  At the July 13, 2005 resentencing on remand—where a life sentence was no longer mandatory—the Court sentenced Hardnett to 396 months on Count One and 360 months on Count Six.  (ECF No. 179.)  Looking to the 18 U.S.C. § 3553(a) sentencing factors, the Court considered mitigating evidence regarding Hardnett's traumatic childhood and Hardnett's positive involvement with his family.  (July 13, 2005 Sent. Tr. 16; ECF No. 336-2.)  Noting that a life sentence "is the second most serious penalty that can be imposed short of the death penalty," the Court weighed whether Hardnett's crime warranted that serious federal penalty.  (*Id.*)  The conclusion was no.  Judge James R. Spencer specifically identified that "if left to my own devices, would I have given Mr. Hardnett life? No." (*Id.* 16-17.)  Because of the serious nature of the crime, the Court then imposed a 396 month (33 years) sentence on Count One and a 360 month (30 years) sentence on Count Six.  (*Id.* 17.)

Later, the Sentencing Commission reduced the Guidelines for Hardnett's offense.[4] (ECF No. 259.)  Specifically, Amendment 750 as set forth in Supplement to the 2010 Guidelines Manual (effective November 1, 2010), reduced the statutory penalties for cocaine base ("crack cocaine") offenses such as Hardnett's in Count One.  (ECF Nos. 269, 282.)  On motion by Hardnett, the Court reduced his sentence for Count One from 396 months to 360 months.  (ECF

---

[4]  On three separate occasions in recent years the Sentencing Commission has amended the Federal Sentencing Guidelines to lower the punishment for certain drug trafficking crimes, and voted to apply those reductions retroactively.  *See* Amendment 706, as amended by Amendment 711, and made retroactive by Amendment 713 (the 2007 Crack Cocaine Amendment); Amendment 750, made retroactive by Amendment 759 (the 2010 Fair Sentencing Act Amendment); and Amendment 782 (the 2014 Drug Guidelines Amendment, often referred to as "Drugs Minus Two").  The amendments generally altered the drug quantities necessary to trigger certain Guidelines ranges.  Pursuant to 18 U.S.C. § 3582(c)(2) courts were authorized to reduce the sentences of incarcerated offenders pursuant to those retroactive Guideline amendments.  Congress, in contrast, implemented the First Step Act, which makes it unique from the retroactive Guidelines amendments that the Commission promulgated.

No. 282.) Because of the drug weight attributed to Hardnett in Count One, however, the twenty-year mandatory minimum remained in effect. The 30-year sentence for Count Six did not change and the supervised release terms remained in place.

In 2016, during the Clemency Initiative that President Barack Obama authorized during his administration, *pro bono* Counsel reviewed Hardnett's case to determine whether he was eligible to seek clemency or other sentencing relief. (ECF No. 321.) As part of that request, *pro bono* Counsel compiled Hardnett's prison records, obtained several letters written on his behalf, documented pre-conviction and post-conviction mitigating evidence, and thoroughly analyzed his criminal history points and evaluated how, in 2016, certain criminal history points would no longer count against him in sentencing. (*Id.*)

After conducting this review, *pro bono* Counsel asked the Court and the United States Attorney's office to consider implementing a reduction of Hardnett's sentences in accordance with the procedure used in *Holloway v. United States*, 68 F. Supp. 3d 310 (E.D.N.Y 2014). In response to that inquiry, on January 7, 2016, Judge Spencer declined to follow the resentencing procedure used in *Holloway,* but added the following:

> Counsel, alternatively, seeks a statement from the Court that Mr. Hardnett would receive a substantially lower sentence today. The Court affirmatively responds to that inquiry. Yes, if Mr. Hardnett were sentenced today, he would receive a substantially lower sentence.

(ECF No. 322.)

Finally, in this First Step Act filing, Hardnett supplied numerous records and letters in support of his request for First Step Act relief. (ECF No. 337-1.) The records show that Hardnett has engaged in many prison programs and has only handful of minor disciplinary infractions during his incarceration. (*Id.*) His Education Teacher remarked, for example, that Hardnett "exhibits himself as an individual who has developed and persevered during his

incarceration." (Reply Ex. A. 72, ECF No. 337-1.) His immediate supervisor in the recreation services department at the Federal Correctional Complex in Petersburg, Virginia writes of Hardnett that he is "consistently dependable and pleasant," he is "widely respected by inmates and staff alike," concluding that "in my 16 years of experience; Mr. Hardnett is the most modeled and exceptional inmate I have encountered." (Reply Ex. A. 68, ECF No. 337-1.) Another Recreation Specialist who supervises Hardnett commends his ability to plan out "his daily responsibilities for each day," adding that he "balances his work life with his church life and education." (*Id.* 71.) Hardnett himself wrote to the Court, accepting responsibility for his actions, expressing remorse, and recognizing that his "past cost [him his] life." (*Id.* 89.) Hardnett knows that he "was wrong and my decisions as well as my actions I've made in the past were solely of my own doing and the blame belongs to me. No matter how I tried to justify my wrongs to make them appear to be right, they were still wrong and that is the fact of the matter." (*Id.*) The United States responded in Opposition, arguing that the drug amounts affiliated with his offenses preclude First Step Act relief.

Hardnett has served roughly 196 months (more than 16 years) of his 360-month sentence and, according to the parties, is scheduled to be released on March 22, 2029, or roughly nine and a half years from now.[5] (Mot. 1 n.1.)

## II. Legal Framework under the First Step Act

Understanding the First Step Act's enactment and application requires the Court to briefly review Federal sentencing laws regarding powder cocaine and crack cocaine offenses and how such laws have evolved over the past thirty-five years. This evolution bears on Hardnett's

---

[5] Hardnett's co-conspirators received shorter sentences and are no longer incarcerated. *See* Fed. Bureau of Prisons Inmate Locator (searching names of co-conspirators). *See generally United States v. Honor, et al.*, No. 3:03-cr-212, Docket Sheet.

sentencing in 2004, his resentencing in 2005, his sentence modification in 2013, and ultimately, the Motion at bar.

### A.  History of Sentencing Powder Cocaine and Crack Cocaine Offenses

The Sentencing Reform Act of 1984 created "a federal Sentencing Commission instructed to write guidelines that judges would use to determine sentences imposed upon offenders convicted of committing federal crimes." *Dorsey v. United States*, 567 U.S. 260, 265 (2012). That legislative Act directed the Commission to create in the Guidelines categories of offense behavior and offender characteristics to inform the Court of the method for reaching an appropriate sentence. *Id.* The Guidelines determined most drug-crime offense levels through a table based on drug amounts or weight. *Id.* at 265–66.

In 1986, Congress passed the Anti-Drug Abuse Act, which set forth more specific federal laws regarding illegal drugs. *Dorsey*, 567 U.S. at 266. The Anti-Drug Abuse Act delineated specific drugs and set forth penalties relative to each drug and amounts. *Id.* The statute created "mandatory minimum" sentences—sentencing floors—that a federal judge could not go below unless narrow factual circumstances were present. *Id.* Generally, the statute set drug quantity thresholds, which invoked no mandatory minimum, a five-year mandatory minimum, or a ten-year mandatory minimum. *Id.*

The Anti-Drug Abuse statute also altered sentencing practice concerning crack cocaine and powder cocaine offenses. In doing so, the Anti-Drug Abuse Act established the 100-to-1 ratio associated with the amount of crack versus powder cocaine necessary to trigger mandatory minimum prison sentences—meaning that possession of five grams of crack cocaine would mandate the same minimum sentence as 500 grams of powder cocaine. *Id.* With this statutory

framework in place, "the Sentencing Commission incorporated the 1986 Drug Act's mandatory minimums into the first version of the Guidelines themselves." *Dorsey*, 567 U.S. at 267.

"During the next two decades, the Commission and others in the law enforcement community strongly criticized Congress' decision to set the crack-to-powder mandatory minimum ratio at 100 to 1." *Dorsey*, 567 U.S. at 268. *See, e.g.*, *United States v. Perry*, 389 F. Supp. 2d 278, 300 (D.R.I. 2005) ("For over a decade, the Sentencing Commission has urged an overhaul of the law concerning sentences in cocaine cases, particularly crack cases."); *United States v. Smith*, 359 F. Supp. 2d 771, 777 (E.D. Wis. 2005) ("Courts, commentators and the Sentencing Commission have long criticized this [crack cocaine] disparity, which lacks persuasive penological or scientific justification, and creates a racially disparate impact in federal sentencing.") (collecting cases). To illustrate the problem with the crack-to-powder mandatory ratio, one court has explained:

> five grams of crack, which triggers a five-year mandatory minimum sentence, represents only 10-50 doses with an average retail price of $225-$750 for the total five grams. In contrast, a powder cocaine defendant must traffic in 500 grams of powder, representing 2500–5000 doses with an average retail price of $32,500–$50,000, in order to receive the same five-year sentence. The 500 grams of cocaine that can send one powder defendant to prison for five years can be distributed to eighty-nine street dealers who, if they converted it to crack, could make enough crack to trigger the five year mandatory minimum for each defendant. The result is that local-level crack dealers get average sentences quite similar to intrastate and interstate powder cocaine dealers; and both intra-and interstate crack dealers get average sentences that are longer than international powder cocaine dealers.

*Smith*, 359 F. Supp. 2d at 779.

### 1.      <u>Commission-Driven Ratio Reductions in the Sentencing Guidelines</u>

As the disparity between crack cocaine and powder cocaine drew criticism, Congress and the United States Sentencing Commission attempted to address this disproportionate inequity in several ways. On three separate occasions the Sentencing Commission amended the Sentencing

Guidelines to lower the punishment for certain drug trafficking crimes and voted to apply those reductions retroactively. *See* U.S. SENTENCING GUIDELINES MANUAL Amendment 706; Amendment 750; Amendment 782. Notably, the Commission changed the sentencing *Guidelines* ranges for crack cocaine offenses. But only Congress could alter the *statutory* penalties for such crimes.

### 2.    Congressional Alterations to Penalties for Crack Cocaine Offenses

Relevant to the Motion at bar, in 2010, Congress passed, and the President enacted, the Fair Sentencing Act of 2010 (the "Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2372, which "reduced the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Through the Fair Sentencing Act, Congress reduced the crack-to-powder cocaine disparity from 100-to-1 to 18-to-1. *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). The Fair Sentencing Act also directed the Sentencing Commission to conform the Sentencing Guidelines to the new statutory minimums "as soon practicable." *Id.* But the Fair Sentencing Act did not apply retroactively to inmates like Hardnett who committed their drug offenses prior to 2010.

To further remedy unfairly harsh sentences for drug offenses, in 2018, Congress passed, and the President signed into law, the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, which made retroactive certain provisions of the Fair Sentencing Act. Section 404 of the First Step Act permits "[a] court that imposed a sentence for a covered offense . . . [to] impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). The First Step Act

defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." *Id.* at § 404(a), 132 Stat. at 5222. These specified sections modified the drug amounts required to trigger mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5–year mandatory minimum and from 50 grams to 280 grams with respect to the 10–year mandatory minimum. Fair Sentencing Act, Pub. L. No. 111–220, § 2(a), 124 Stat. 2372, 2372. The Fair Sentencing Act also eliminated the 5–year mandatory minimum for simple possession of crack. *Id.* at § 3, 124 Stat. 2372, 2372; *see also Dorsey v. United States*, 567 U.S. 260, 276–77 (2012) (explaining sentencing discrepancies for certain drug offenses that the Fair Sentencing Act sought to remedy).[6]

### B.  <u>Debate as to First Step Act Resentencing Procedure</u>

Section 404 of the First Step Act does not expressly provide for a full or plenary resentencing or for a reconsideration of the original sentencing determinations.[7] Many courts

---

[6] "Between 1986 and 2010, judges, the U.S. Sentencing Commission, law enforcement officials, and the public at-large decried the 100:1 crack-to-powder cocaine ratios for its abject unfairness and racial bias." *United States v. Pierre*, 372 F. Supp. 3d 17, 18 (D.R.I. 2019). The initial reports regarding the First Step Act reflect these disparities, *see* U.S. SENTENCING COMMISSION FIRST STEP ACT OF 2018 RESENTENCING PROVISIONS, RETROACTIVITY DATA REPORT 6 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/retroactivity-analyses/first-step-act/201900607-First-Step-Act-Retro.pdf (showing that 91.3% of inmates receiving relief under the Act are African American), despite the fact that the federal inmate population is 37.5% Black, 1.5% Asian, 2.3% Native American, and 58.7% White. FED. BUREAU PRISONS, *Inmate Race Statistics*, https://www.bop.gov/about/statistics/statistics_inmate_race.jsp (last updated Oct. 5, 2019).

[7] Section 404 provides:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) Definition Of Covered Offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for

have grappled with the manner in which both the eligibility and the extent of any reduction should be determined under the First Step Act. No uniform procedure has emerged. Themes as to how the evaluation should proceed have nonetheless developed. The Court concludes that, regardless of whether it applies § 3582(c)(1)(B) or the First Step Act, standing alone, either procedural vehicle affords Hardnett relief.

### 1. Procedures Undertaken When Modifying a Sentence Pursuant to § 3582(c)(1)(B)

The United States contends that 18 U.S.C. § 3582(c)(1)(B) governs these proceedings. That provision states: "[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by *statute* or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B)(emphasis added). While the United States asserts that § 3582 proceedings are limited in scope and do not authorize a *de novo* resentencing, (Opp'n 17), nothing in subsection 3582(c)(1)(B) prohibits the Court from considering relevant sentencing factors when examining a defendant's Guidelines range. *See United States v. Dunphy*, 551 F.3d

---

which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act, Pub. L. No. 115–391, § 404, 132 Stat. 5194, 5222.

247, 256 (4th Cir. 2009) (finding that the district court properly considered the § 3553(a) sentencing factors, which did not turn the § 3582(c) proceeding into a full sentencing hearing).

Indeed, the majority trend favors that, in most resentencing contexts, the resentencing court must at least consider the 18 U.S.C. § 3553(a) factors when modifying or imposing a sentence. This approach mirrors the Fourth Circuit's analysis under Rule 35(b)—specifically identified in subsection 3582(c)(1)(B)—which allows the Court to "consider other sentencing factors . . . when deciding the extent of a reduction." *United States v. Davis*, 679 F.3d 190, 195, 197 (4th Cir. 2012) ("Imposing appropriate sentences requires that court be able to balance all relevant sentencing factors when determining a defendant's actual sentence reduction.").[8] Furthermore, the Fourth Circuit has recently emphasized that district courts must adequately consider evidence of rehabilitation and other post-conviction mitigating conduct before deciding § 3582 motions for sentence reductions. *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019) (when considering § 3582(c)(2) motions, a "district court cannot ignore a host of mitigation evidence and summarily deny a motion to reduce a sentence and leave both the defendant and the appellate court in the dark as to the reasons for its decision.").

Numerous courts have examined First Step Act motions pursuant to § 3582(c)(1)(B). *See, e.g.*, *United States v. Coleman*, 382 F. Supp. 3d 851, 857 (E.D. Wis. 2019) (collecting First Step Act cases utilizing 18 U.S.C. § 3582(c)(1)(B) as procedural vehicle for motions brought under the statute). The Court similarly concludes that § 3582(c)(1)(B) informs the Court

---

[8] The Sentencing Commission contemplates applying the § 3553(a) sentencing factors and applicable Guidelines policy statements in First Step Act proceedings. *See ESP Insider Express*, SPECIAL EDITION (U. S. Sentencing Comm'n, Office of Educ. & Sentencing Practice), Feb. 2019, at 8, https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last visited Aug. 12, 2019) ("[T]he courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing.").

regarding how to modify a sentence pursuant to the First Step Act. At the same time, using this procedural vehicle does not foreclose the possibility that the First Step Act, standing alone, also provides an avenue to seek relief from certain crack cocaine sentences imposed prior to 2010.

## 2. The First Step Act Grants Broad Discretion to the Court

While § 3582(c)(1)(B) informs the Court on how to approach First Step Act relief, the Court recognizes that as a statutory change the First Step Act itself authorizes sentence reductions. *See United States v. Dodd*, 372 F. Supp. 3d 795, 797–98 n.2 (S.D. Iowa 2019) ("As section 404 of the First Step Act authorizes a reduction in sentence by its own terms, it would be effective even absent the existence of 18 U.S.C. § 3582(c)(1)(B) as complementary authority."). The First Step Act, by its own terms, grants Courts broad discretion to reduce sentences for certain drug offenses. *See* Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018) ("A court that imposed a sentence for a covered offense may . . . [even *sua sponte*] . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.").

The instant Motion, then, proceeds under a different procedural vehicle than a motion to reduce sentence pursuant to an amended *Guidelines* range. Because Congress and the President enacted the First Step Act rather than the Sentencing Commission, the policy statements carry less weight than the relevant statutes and statutory sentencing factors. *See, e.g.*, *Dorsey*, 567 U.S. at 266 ("Like other sentencing statutes, it trumps the Guidelines."). In determining the propriety of a sentence modification, the Court first addresses whether a reduction comports with the requirements of the First Step Act and then "consider[s] whether the authorized reduction is

warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010).[9]

When determining a sentence, after calculating the initial Guidelines range, the Court may decide whether a "variance sentence," *i.e.*, a sentence not within the advisory guideline range, serves the factors set forth in § 3553(a). *United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006). The court may impose this variant sentence provided that the sentence falls within the statutory limits for the underlying offense and is "reasonable." *Id.* But the sentencing court must adequately explain the reasons for the variance. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Furthermore, the First Step Act makes clear that even if a defendant is eligible for a sentence reduction, the decision whether to grant a reduction remains within the district court's discretion. *See* Pub. L. No. 115–391, §§ 404(a)-(b), 132 Stat. 5194, 5222.

### III. Analysis

Having reviewed the evolution of crack cocaine and powder cocaine penalties, the genesis of the First Step Act, and the procedural vehicles to employ when resolving the instant motion, the Court turns next to the specifics of Hardnett's case. The Court first concludes that the drug weight in the indictment, rather than the drug weight in the presentence report, determines threshold eligibility for First Step Act relief. Following this initial determination, the Court will grant in part and deny in part Hardnett's Motion, and reduce his sentences on both counts.

---

[9] The Court recognizes that while *Dillon* provides guidance, that case addressed a *Guidelines*-driven decision under § 3582(c)(2). In contrast, Hardnett seeks relief based on a *statutory* change, proceeding under either § 3582(c)(1)(B) or the First Step Act itself.

**A.     Determining the Applicable Drug Weight for First Step Act Eligibility**

Hardnett committed an offense before August 3, 2010, which involved distributing fifty

grams or more of crack cocaine (Count One).  Relevant here, Section 2 of the Fair Sentencing

Act increased the drug quantities necessary to trigger mandatory minimum sentences under 21

U.S.C. § 841(b)(1), *see* Fair Sentencing Act, Pub. L. No. 111–220, § 2, 124 Stat. 2372, 2372.

The Court first examines whether Hardnett's offense falls within Section 2 of the Fair Sentencing

Act.  If so, the First Step Act "reduce[s] the statutory penalties for cocaine base offenses" and

modifies the penalties applicable to Hardnett.  *Peters*, 843 F.3d at 575.  The United States

disputes that Hardnett's offense constitutes a "covered offense" as defined by the First Step Act

because, at sentencing, the PSR attributed to Hardnett 1.5 kilograms of cocaine base.[10]  *See* First

Step Act, Pub. L. 115–391, § 404(a), 132 Stat. 5194, 5222.

---

[10]  In 2003, the Drug Quantity Table in the Sentencing Guidelines imposed the highest
base offense level, 38, for "1.5KG or more of Cocaine Base."  USSG § 2D1.1(c)(1) (2003).  By
contrast, the 2018 Sentencing Guidelines impose the highest base offense level, 38, for "25.2 KG
or more of Cocaine Base."  USSG § 2D1.1(c)(1) (2018).  In 2003, when convicting and
sentencing Hardnett, the PSR and the Court did not need to specify a drug weight beyond 1.5
kilograms, as anything higher than that amount resulted in the same base offense level of 38
under the 2003 Guidelines.

The United States argues that the PSR attributed to Hardnett 15 kilograms of cocaine
base, not 1.5 kilograms.  (Sur-Reply 3 n.4.)  A review of the PSR and court records show that the
PSR's authors never specifically accepted the United States' assertion that it found Hardnett
responsible for 15 kilograms of cocaine base, nor did the Court do so at sentencing.  (PSR ¶¶ 28,
32; Sent. Tr. 10; Resent. Tr. 11.)  Rather, Probation concluded that, "[b]ased on the
Government's assertions as to what they proved at trial, it is recommended that [Hardnett] be
held accountable for distributing in excess of 1.5 kilograms of cocaine base."  (PSR ¶ 32.)

The Court observes that post-conviction records from Probation confused the drug weight
attributed to Hardnett and suggested that the Court specifically found Hardnett responsible for 15
kilograms of cocaine base.  (*See* ECF No. 261-1, 318.)  But the Court never made that specific
finding.  *See also United States v. Green*, 764 F.3d 1352, 1357 (11th Cir. 2014) (stating that a
prior appellate opinion, which noted that the base offense level for a cocaine base offense was
36, had not made a factual finding binding the district court under the law-of-the-case doctrine).
Probation recognized this error in its First Step Act worksheet.  ECF No. 344) ("The worksheet
prepared for Retroactive Drug Guideline Amendment 782 (Effective November 1, 2014)
included a typographical error in the drug weight").  To be sure, the Court and the PSR attributed
to Hardnett 1.5 kilograms of cocaine base.  In any event, the United States contends that even if

The parties dispute whether the Court should use the drug weight in the indictment (the "indictment-controls theory") or the higher weight in the PSR (the "conduct-controls theory") to determine Hardnett's eligibility for relief. Hardnett's indictment charged him with conspiracy to possess with intent to distribute 50 grams or more of cocaine base (Count One). Count Six did not specify a drug weight. The PSR, however, attributed to Hardnett possession of 1.5 kilograms of cocaine base. Because the PSR attributed to Hardnett 1.5 kilograms of cocaine base, which would make him subject to the 21 U.S.C. § 841(b)(1)(A) penalties (ten years to life), the United States argues that the First Step Act does not entitle Hardnett to relief. If the Court utilizes the indictment-controls theory, the First Step Act may afford Hardnett relief based on the lower drug weight specified in the indictment (50 grams of cocaine base). *See* 21 U.S.C. §841(b)(1)(B) (five to forty years). If the Court utilizes the conduct-controls theory, the First Step Act would not apply to Hardnett based on the higher drug weight specified in the PSR (1.5 kilograms of cocaine base). *See* 21 U.S.C. §841(b)(1)(A). This Court concludes, like many others, that the phrase "violation of a Federal criminal statute," in the definition of a "covered offense" under Section 404(a) of the First Step Act, refers to the amount charged in the indictment on which a defendant was convicted, not the drug amount otherwise attributed to him or her by judicial finding.

1. **The Eastern District of Virginia Correctly Applies the Indictment-Controls Theory, Which Renders Hardnett Eligible for First Step Act Relief**

Because a drug quantity of 50 grams would reduce Hardnett's sentencing range from ten years to life to five years to forty years, the Court concludes that the indictment-controls theory—applicable here—renders Hardnett eligible for First Step Act relief. District courts

the Court uses the 1.5-kilogram drug weight, the First Step Act does not afford Hardnett relief. (Sur-Reply 3–4.)

within the Eastern District of Virginia have consistently found that threshold eligibility under the First Step Act depends on the offense as described in the charging document, not the drug quantity attributed to the defendant at sentencing. *See, e.g.*, *United States v. Murray*, No. 2:97-cr-25, slip op. at 6 (E.D. Va. July 15, 2019) ("the drug quantity attributable to the defendant must be based on the statutory amounts in the guilty plea and the indictment, not the offense conduct as noted in the presentence report"); *Wright v. United States*, No. 4:95cr39, 2019 WL 3046096, at *6 (E.D. Va. July 11, 2019) ("the drug quantity attributable to the defendant must be based on the statutory amounts alleged in the indictment, not the offense conduct as noted in the presentence report"); *United States v. Jones*, No. 3:04-cr-392, slip op. at 9 (E.D. Va. June 19, 2019) ("the drug weight in the indictment will govern the modification under the First Step Act"); *United States v. Outler*, No. 1:06-cr-291, slip op. at 4 (E.D. Va. Apr. 26, 2019) ("this Court joins the growing consensus that eligibility for a sentence reduction under the First Step Act depends on the offense as described in the charging document . . . ").[11]

In *Wright*, a jury convicted Marty Wright of numerous counts stemming from a family-run crack cocaine and marijuana distribution conspiracy. *Wright*, 2019 WL 3046096, at *2, 7. Relevant here, Count One involved "[c]onspiracy to distribute and possess with intent to

---

[11]  The United States does not identify a First Step Act case within the Eastern District of Virginia that has employed the conduct-controls theory. Nevertheless, the Court recognizes that other district courts have adopted the conduct-controls theory rather than the indictment-controls theory. *See, e.g.*, *United States v. Blocker*, 378 F. Supp. 3d 1125, 1131 (N.D. Fla. 2019) ("Under the indictment-controls theory, in contrast, every crack defendant sentenced before the Fair Sentencing Act took effect would be eligible for a reduction, at least in districts like this one in which indictments routinely track the statute."). Because Congress provided no direction apart from the statute itself, this Court approaches this issue as a question of statutory interpretation and examines the text of the First Step Act. *Blocker*, 378 F. Supp. 3d at 1131 ("Had that been Congress's intent [to utilize the indictment-controls theory or conduct-controls theory], surely there would be some reference to this in the legislative history. There is none.").

To the extent these differing court evaluations suggest that the First Step Act is ambiguous, absent legislative history for this criminal statute, "the rule of lenity informs the Court's decision." *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019).

distribute 50 grams or more of cocaine base," Count Two involved [e]ngaging in a continuing criminal enterprise," Count Nine involved "[d]istribution of approximately 1/8 ounce of cocaine base," Counts Eleven and Fourteen involved "[p]ossession with intent to distribute 50 grams or more of cocaine base," and Count Thirty-Six involved "[d]istribution of cocaine base." *Id.* at *3–4.

Prior to sentencing, the probation officer attributed to Wright at least 12.5 kilograms of crack cocaine. *United States v. Wright*, No. 4:95cr39, ECF No. 717 at 7. Wright ultimately faced a 660-month prison term. *Wright*, 2019 WL 3046096, at *3 ("Wright's current sentence is for 660 months, or fifty-five years. Petitioner Wright has served twenty-three years of this sentence."). Wright later sought relief pursuant to the First Step Act. When resolving the First Step motion, the district court found Wright eligible for relief based on the charging documents and reduced his total sentence to 360 months. *Id.* at *9.

Similarly, in *Outler*, Larry Outler pleaded guilty to conspiracy to distribute 50 grams or more of cocaine base. No. 1:06-cr-291, slip op. at 1. The probation officer attributed at least 518 grams to Outler in his PSR. *Id.* at 2. The court found Outler eligible for relief based on the charging document and reduced his sentence to time served. *Id.* at 4, 5. The court explained that "the term 'offense' is used to describe the 'crime as generally committed'—that is, as defined by its statutory elements rather than by the facts of a particular case." *Id.* at 3. Because Outler was charged with and pleaded guilty to conspiracy to distribute 50 grams or more of cocaine base, that crime was the "covered offense" under the First Step Act.

The United States, however, argues that these cases incorrectly conclude that the drug weight in the charging document controls. (Sur-Reply 1, 2, ECF No. 340.) The United States posits that Congress did not use the term "conviction" in the First Step Act, rather it merely

referenced covered offenses as "violations." (*Id.*)  And, the United States contends, that "[w]hile § 404 refers to the 'violation' that the defendant 'committed,' it never refers to the 'indictment.'" (*Id.* 2.)[12]

This linguistic argument contravenes the plain language of the First Step Act.  Through the First Step Act, Congress granted the Courts broad discretion to give a certain class of defendants—those who were sentenced under a statute for which the penalties changed in 2010—a new sentence.  Although Congress certainly could have made § 404 of the First Step Act clearer, the Act's imprecision does not suggest that Congress meant something awkward or unfair.  The First Step Act permits courts to reduce a defendant's sentence for a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by . . . the Fair Sentencing Act."  § 404(a), 132 Stat. at 5194, 5222.  Read most naturally, the covered offense refers to the charge of conviction—the charge in the indictment.

---

[12]  The United States cites *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009) and *United States v. Hayes*, 555 U.S. 415, 426 (2009) to support its argument that "committed" and "violation" as used in the First Step Act refer to conduct, thus the drug weight in the indictment cannot control. (*Id.*)  Neither case persuades.  *Nijhawan* addressed, in the immigration context, whether to apply the categorical method to determine when an offender has committed an aggravated felony, such as a fraud or deceit crime, rather than an element of that crime.  557 U.S. at 36 (concluding that the "fraud and deceit" provision before us calls for a "circumstance-specific," not a "categorical," interpretation).  *Hayes* examined whether state crimes need to include the element of a "domestic relationship" to fall within a particular firearms prohibition.  555 U.S. at 426 (affirming a conviction under § 922(g)(9) where the predicate offense was a misdemeanor assault that did not include a domestic relationship as an element but did involve such a relationship factually).

Finally, the Fourth Circuit recently rebuffed in an *en banc* opinion similar arguments that the United States raised based on *Nijhawan* and *Hayes*.  *See United States v. Simms*, 914 F.3d 229, 244–45 (4th Cir. 2019), *cert. denied*, No. 18-1338, 2019 WL 4923463 (U.S. Oct. 7, 2019) (rejecting United States's argument that *Nijhawan* and *Hayes* require finding that using the word "offense" in a statute necessitates a conduct-specific interpretation when examining underlying crime).  Courts outside the Fourth Circuit have reached the same conclusion regarding the meaning of "covered offense" in the First Step Act.  *See, e.g.*, *United States v. Boulding*, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019) ("Quantity is simply not part of the statutory test for eligibility under the First Step Act.  Eligibility turns entirely on the categorical nature of the prior conviction.").

Accordingly, this Court finds that the phrase "violation of a Federal criminal statute," in the definition of a "covered offense" under Section 404(a) of the First Step Act, refers to the amount charged in the indictment on which a defendant was convicted, not the amount otherwise attributed to him or her by judicial finding. In other words, under the plain language of Section 404, the Court must determine whether an offense is a 'covered offense' by examining the statute the defendant violated. In this case, Hardnett violated 21 U.S.C. § 841(b)(1)(B)(iii) when he conspired to possess and distribute 50 grams or more of crack cocaine, as set forth in Count One.

### 2. Federal Sentencing Law Further Supports the Indictment-Controls Theory

The United States further argues that because a First Step Act motion brought pursuant to § 404 does not constitute a *de novo* resentencing, "neither *Apprendi* nor *Alleyne* apply retroactively." (Opp'n 20.) Therefore, the United States contends that the Court should deny Hardnett relief because his "offense involved a drug quantity supporting the same offense level (or statutory range) both before and after a retroactive change in sentencing law." (Opp'n 19.) To understand why the United States' argument does not persuade, the Court conducts a brief review of *Apprendi*, *Alleyne*, and federal sentencing law.

#### a. Deciding Whether *Apprendi* and *Alleyne* Trigger a Right to Relief Retroactively on Collateral Review Presents a Different Question from whether the Cases apply to Proceedings Independently Authorized by the First Step Act

In *Apprendi*, a jury convicted the defendant of a gun crime that carried a maximum prison sentence of 10 years. *Apprendi v. New Jersey*, 530 U.S. 466, 468–69 (2000). But a judge sought to impose a longer sentence pursuant to a statute that authorized him to do so if he found, by a preponderance of the evidence, that the defendant had committed the crime with racial bias. *Apprendi* held this scheme unconstitutional. "[A]ny fact that increases the penalty for a crime

beyond the prescribed statutory maximum," the *Apprendi* court explained, "must be submitted to a jury, and proved beyond a reasonable doubt" or admitted by the defendant.[13]  530 U.S. at 490.

In *Alleyne*, a jury convicted the defendant of a crime that ordinarily carried a sentence of five years to life in prison.  *Alleyne v. United States*, 570 U.S. 99, 103 (2013).  But a separate statutory "sentencing enhancement" increased the mandatory minimum to seven years if the defendant "brandished" the gun.  *Id*. at 104.  At sentencing, a judge followed then existing practice to find by a preponderance of the evidence that the defendant had indeed brandished a gun and imposed the mandatory minimum 84 months (seven years) prison term.  *Id.* at 106.

The Supreme Court reversed.  Finding no basis to do otherwise in the original understanding of the Fifth and Sixth Amendments, the Court held that "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum" as it does to facts increasing the statutory maximum penalty.  *Alleyne*, 570 U.S. at 112.  Nor did it matter to *Alleyne*'s analysis that, even without the mandatory minimum, the trial judge would have been free to impose an 84 month (seven year) sentence because it fell within the statutory sentencing range authorized by the jury's findings.  *Id.* at 114.  Both the "floor" and "ceiling" of a sentencing range "define the legally prescribed penalty."  *Id.* at 112.  The Court had lost any option to sentence the defendant to five or six years.  And under our Constitution, when "a finding of fact alters the legally prescribed punishment so as to aggravate it" that finding must be made by a jury of the defendant's peers beyond a reasonable doubt.  *Id.* at 114–15.  Along the way, the Supreme Court observed that there can be little doubt that "[e]levating the low-end of a sentencing range heightens the loss of liberty associated with the crime:  the defendant's

---

[13]  The Supreme Court decided *Apprendi* three years before Hardnett's conviction.  Since that decision, indictments in drug cases generally charge a drug type and amount sufficient to place the offense in what the Prosecutor believes to be the proper sentencing range.

expected punishment has increased as a result of the narrowed range and the prosecution is empowered, by invoking the mandatory minimum, to require the judge to impose a higher punishment than he [or she] might wish." *Id.* at 113 (internal quotation marks omitted).

Here, the United States argues that *Apprendi* and *Alleyne* do not apply retroactively on collateral review, (*see* Opp'n 20), but that does not end the analysis. This case proceeds under the First Step Act or 18 U.S.C. § 3582(c)(1)(B). Section 3582(c)(1)(B) permits courts to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B).

Sentence reductions authorized by statute differ from habeas proceedings. While a § 3582 sentence reduction presents a form of collateral review, *Wall v. Kholi*, 562 U.S. 545, 551 (2011), the Supreme Court has indicated that nonretroactivity principles do not necessarily apply in sentence reductions. In *Danforth v. Minnesota*, the Supreme Court explained that the rule established in *Teague v. Lane*, 489 U.S. 288 (1989)—by which courts determine whether new constitutional rules of criminal procedure will apply to cases retroactively—was meant to "apply only to federal courts considering habeas corpus petitions challenging state-court criminal convictions." 552 U.S. 264, 278–79 (2008). Thus, a retroactivity determination under *Teague* "speaks only to the context of federal habeas," and not beyond. *Id.* at 281.

Determining whether new constitutional rules apply in the context of statutorily-authorized sentence reductions, when the initial sentence became final before the new rule was announced, presents an inquiry distinct from that in *Teague*. Both *Apprendi* and *Alleyne* are binding on this Court for sentencings conducted today. That these procedural rules, as set forth in *Apprendi* and *Alleyne*, do not trigger a right to relief retroactively on collateral review presents a different question from whether they apply to proceedings independently authorized under the

First Step Act.  As a result, the Court is not constrained by the United States' argument that *Apprendi* and *Alleyne* provide no insight because those cases do not apply retroactively on collateral review.  That restriction speaks only to habeas proceedings.[14]

Other courts have reached similar conclusions concerning the current federal sentencing landscape and sentencing under the First Step Act.  *See, e.g.*, *United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019) ("although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act"); *United States v. Jones*, No. 1:08cr40, 2019 WL 3074075, at *3, (W.D. Va. July 15, 2019) (accord). For example, in *Wright*, the Court explained that, after finding the First Step Act applicable, it must impose a new sentence based on the law at the time of sentencing.  *Wright*, 2019 WL 3046096 at * 6 (citing *United States v. Schaefer*, 120 F.3d 505,

---

[14]  Furthermore, the Court does not find convincing the argument that it must completely ignore federal sentencing case law that has developed since Hardnett's indictment in 2003.  As Justice Gorsuch recently explained,

> Our precedents, *Apprendi*, *Blakely*, and *Alleyne* included, have repeatedly rejected efforts to dodge the demands of the Fifth and Sixth Amendments by the simple expedient of relabeling a criminal prosecution a 'sentencing enhancement.'  Calling part of a criminal prosecution a 'sentence modification' imposed at a 'postjudgment sentence-administration proceeding' can fare no better.  As this Court has repeatedly explained, any 'increase in a defendant's authorized punishment contingent on the finding of a fact' requires a jury and proof beyond a reasonable doubt 'no matter' what the government chooses to call the exercise.
>
> . . .
>
> [Judges are not licensed] to sentence individuals to punishments beyond the legal limits fixed by the facts found in the jury's verdict.  To the contrary, we recognized in *Apprendi* and *Alleyne*, a 'criminal prosecution' continues and the defendant remains an 'accused' with all the rights provided by the Sixth Amendment, until a final sentence is imposed.

*United States v. Haymond*, 139 S. Ct. 2369, 2379 (2019) (Gorsuch, J.) (plurality opinion) (internal quotations and citations omitted).

507 (4th Cir. 1997)).  As such, the *Wright* Court recognized "that (1) any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt, and relatedly, (2) any fact that increases a mandatory minimum must be submitted to the jury."  *Id.* (internal quotations marks and citations omitted).  This Court joins that chorus.

To further support using the indictment-controls theory to determine threshold eligibility, the Court also considers that a judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct.  This long-standing proposition is not a new development in federal sentencing law; indeed, it underpins the foundation of our criminal justice system.  *See Apprendi*, 530 U.S. at 510 (Thomas, J., concurring) ("[T]he indictment must allege whatever is in law essential to the punishment sought to be inflicted." (quoting 1 J. Bishop, Law of Criminal Procedure 50 (2d ed. 1872))).  If an indictment or "accusation . . . lack[ed] any particular fact which the laws ma[d]e essential to the punishment," it was treated as "no accusation" at all.  *Id.* at 511 (quoting 1 J. Bishop Criminal Procedure § 87 at 55).  And the "truth of every accusation" that was brought against a person had to "be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours."  *Id.* at 477 (majority opinion) (quoting 4 W. Blackstone, Commentaries on the Laws of England 343 (1769)).  These principles remain valid centuries later.

Lastly, the United States' argument that the Court should rely only on the drug weight set forth in the PSR does not reflect the realities of federal sentencing today.  Following the Fair Sentencing Act of 2010, the new Sentencing Guidelines mirror the new statutory minimums.  The Court finds that these considerations further support the decision to employ the indictment-controls theory when analyzing eligibility for relief under § 404 of the First Step Act.  Thus, in

applying the indictment-controls theory here, Hardnett becomes eligible for First Step Act relief given the decreased five–to–forty year penalty range he would face.

<blockquote>

**b.      The Court Must Consider the Relevant § 3553(a) Sentencing Factors**
</blockquote>

Turning to the Motion at bar, the Supreme Court's reasoning in *Dillon v. United States* helps outline the necessary approach.  560 U.S. 817 (2010).  To be sure, *Dillon* ultimately held that the new rule established in *United States v. Booker* did not apply in commission-driven sentence reductions under § 3582(c)(2).  *Dillon*, 560 U.S. at 819.  In so holding, the *Dillon* court did not apply *Teague*'s retroactivity rule; rather, that court contemplated the text and scope of § 3582(c)(2).  Seeing as instructive the approach utilized in *Dillon*, which analyzed a §3582(c)(2) proceeding to amend a sentence pursuant to a retroactive Guidelines amendment, does not undermine this Court's decision to apply the indictment-controls theory to First Step Act proceedings.  Eligibility for relief pursuant to § 404 of the First Step Act turns on the Court's discretion, not the Sentencing Commission's decision to amend a Guidelines range.  Indeed, Section 404(b) of the First Step Act contains a broad grant of authority to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010" were in effect.  Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018).

In *Dillon*, the Supreme Court explained that section "1B1.10(b)(1) requires the court to begin by determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing."  560 U.S. at 827 (internal quotation marks omitted).  That section of the Guidelines states that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection."  USSG 1B1.10(b)(2) (2003).  The Supreme

Court promulgated a two-step process for determining where, and to what extent, a district court may permissibly reduce a *Guidelines range* sentence under § 3582(c)(2). First, the court must "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. Second, the court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* Cases since *Dillon* have further elaborated on the need to consider any applicable § 3553(a) factors in a § 3582 proceeding. *See*, *e.g.*, *Martin*, 916 F.3d at 395. This *Dillon* evaluative construct, while not required, will guide this Court's analysis of Hardnett's case.

Finding that the drug weight in Hardnett's indictment renders him eligible for First Step Act relief, the Court turns now to the extent of Hardnett's sentence reduction.

B. <u>Hardnett Qualifies for a Sentence Reduction Pursuant to the First Step Act</u>

Hardnett requests that the Court reduce his sentence to time served based on the broad discretionary powers the First Step Act provides judges. (Mot. 1; Reply 11–12.) Hardnett further argues that his case is "unique because Judge Spencer, in response to a request for clemency in 2016 by Mr. Hardnett, specifically stated on the record that he would have imposed a 'substantially lower sentence' on Mr. Hardnett if he had sentenced him now." (Mot. 1 (quoting Jan. 7, 2016 Order, ECF No. 322).)

The United States counters that the Court should not reduce Hardnett's sentence because, at sentencing in 2003, Hardnett did not acknowledge his guilt of the charged offenses and his "conduct was serious and violent." (Opp'n 23–24.) This is true. The United States contends Hardnett committed his offenses as a mature adult and that he had already accumulated 16

criminal history points based on convictions for "assault and battery, trespass, criminal possession of a controlled substance [marijuana] and numerous driving offenses." (Opp'n 24.) In response, Hardnett submitted numerous letters written on his behalf regarding his personal growth while in prison, his prison records, and his own letter describing remorse for his behavior sixteen years ago.[15] (ECF No. 337-1.)

The Court finds appropriate reducing Hardnett's sentence to 300 months for each count, to run concurrently.[16] As suggested by the United States Sentencing Commission, the Court will consider the 18 U.S.C. § 3553(a) factors and any complementary policy statements set forth in USSG § 1B1.10. Considering the factors and policy statements together with the arguments in the Motion and responses thereto, imposing a sentence of 300 months imprisonment, five years below the applicable Guidelines range after applying the First Step Act, adequately deters criminal conduct, reflects the seriousness of Hardnett's offenses, promotes respect for the law, and complies with the relevant USSG provisions.

---

[15] In his letter, Hardnett states that he "was wrong and my decisions as well as my actions I've made in the past were solely of my own doing and the blame belongs to me. No matter how I tried to justify my wrongs to make them appear to be right, they were still wrong and that is the fact of the matter." (Reply Ex. A 89, ECF No. 337-1.)

[16] The table below summarizes the differences in the Sentencing Guidelines applicable to Hardnett after the First Step Act:

|  | Original Judgment | Fair Sentencing Act/First Step Act (utilizing drug weight set forth in indictment) |
|---|---|---|
| Total Offense Level: | 46 | 40 |
| Criminal History Category | VI | VI |
| Guideline Range | Life | 360–Life |
| Mandatory minimum | 240 months | 120 months |
| Sentence Imposed | Life, later reduced to 396 months, then 360 months | 300 months |

Hardnett committed very serious drug offenses, resulting in the need for a sentence that punishes and deters.  Hardnett committed these serious crimes as a twenty-eight-year-old, and under this sentence, he will serve nearly the same amount of time in prison (twenty-five years) as he spent out of prison.  Such a sentence adequately punishes and deters.

The Court has also reviewed Hardnett's criminal history as set forth in the PSR.  The PSR calculated sixteen criminal history points for Hardnett, six of which pertain to driving without a license,[17] one pertains to possession of marijuana (for which he paid a $50 fine), three pertain to attempted possession of cocaine (his sole prior felony), one for misdemeanor assault and battery, one pertains to possession of a firearm, and one pertains to criminal trespass in the third degree (which he committed as a juvenile). (PSR Wkst. C.)   In addition, three points criminal history points derive from committing these offenses while on probation, and an additional recency point resulted for committing the offenses within two years of his last conviction (for driving on a suspended license).  (PSR Wkst C.)  Under the current Guidelines, the "recency" point stemming from his conviction for driving without a license would no longer apply to Hardnett.[18]

---

[17]  Under a new Virginia state law that went into effect July 1, 2019, the Commonwealth no longer suspends a driver's license solely for unpaid court costs.  *See* 2018 Va. S.B. No. 1013, Va 2019 Regular Sess.  The record does not indicate whether Hardnett had his license revoked for unpaid court costs, but the number of points tallied against him for driving without a license shows one of the ways Hardnett's criminal history points may have overstated the seriousness of his criminal history.

[18]  USSG § 4A1.1(e) previously provided that one point should be added if the defendant committed the federal offense less than two years after release from imprisonment and was given two points under § 4A1.1(d).  U.S. SENTENCING COMMISSION COMPUTATION OF "RECENCY" CRIMINAL HISTORY POINTS UNDER USSG § 4A1.1(E) 1 (2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100818_Recency_Report.pdf.

Furthermore, the attempted possession of cocaine offense, which he committed when he

was eighteen-years and one-month-old, added not only to his criminal history points but also

served as the predicate drug offense for the § 851 enhancement.[19]  In sum, the record before the

---

[19]  The Court identifies notable changes in sentencing law to provide further context for the legal developments since Hardnett's 2003 sentencing.  Although Hardnett's § 851 sentence enhancement relies on a prior "felony drug offense," federal sentencing law has recently undergone a sea change concerning the use of certain predicate offenses for sentence enhancements.

The Armed Career Criminal Act, for example, looked to whether a person committed a "violent felony" or a "serious drug offense" before applying a significant sentence enhancement. The Supreme Court of the United States recently invalidated the use of certain predicate offenses for application of the Armed Career Criminal Act and its related sentence enhancements. *See, e.g.*, *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (holding that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process), *Sessions v. Dimaya*, 138 S. Ct. 1204, 1210, (2018) (holding that a similarly worded clause in the Immigration and Nationality Act's definition of "crime of violence" suffers from the same constitutional defect).

Relevant here, state drug offenses frequently serve as predicate offenses for application of the Armed Career Criminal Act.  Although the prior offenses listed in Hardnett's PSR did not qualify him as an Armed Career Criminal, the § 851 enhancement relied on an inchoate offense—attempted possession of cocaine—to increase his mandatory minimum sentence. *Cf. United States v. Graves*, 925 F.3d 1036, 1039 (9th Cir. 2019) (observing that courts have applied the categorical approach when evaluating the propriety of a § 851 sentencing enhancement); *United States v. Daniels*, 915 F.3d 148, 149 (3d Cir. 2019) (recognizing that the court must first decide whether § 924(e)(2)(A)(ii)'s definition of a "serious drug offense" encompasses attempts (as defined under federal law) to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance).

The Supreme Court will now determine whether courts must apply the categorical approach when deciding whether a sentence enhancement based on a "serious drug offenses." *See Shular v. United States*, 139 S. Ct. 2773 (2019) (granting petition for writ of certiorari to determine whether the definition of a "serious drug offense" under the Armed Career Criminal Act requires the same categorical approach used in the determination of a "violent felony"). Adding another layer of complexity, the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, incorporated the same definition of "serious drug offense" at issue in *Shular* for purposes of identifying prior convictions that will trigger recidivism enhancements for various drug crimes. Tit. IV, § 401(a)(1).  The Court need not resolve at this juncture whether it must reconsider Hardnett's § 851 sentence enhancement in accordance with the categorical approach, but it recognizes that the application of the categorical approach to predicate offenses, including drug offenses, remains a developing issue in the sentencing context.

Court justifies this twenty-five-year sentence, while also acknowledging the egregious missteps of Hardnett's youth and the variety of crimes comprising his criminal history.

The Court also finds that reducing Hardnett's sentence to 300 months does not threaten public safety. In his sixteen years in prison, Hardnett has accumulated only three infractions (two for fighting the same inmate and one for refusing to comment), all of which occurred before 2007. (ECF No. 336-4.) Hardnett has also completed dozens of programs while incarcerated and has successfully held different jobs. (Reply 17–19.) Hardnett has been employed in the Recreation Services Department of the Federal Correctional Complex in Petersburg, Virginia, as a Maintenance Orderly, Clerk, Referee, and Commissioner. Hardnett has also served as Events Coordinator for various events in prison, including the Residential Drug Abuse Program graduation ceremony. Hardnett assists Reverend James L. Harrison, a volunteer Minister at the prison, in conducting Bible Study Group every Saturday morning. Hardnett submitted copies of letters from four of his past supervisors, his education teacher, and Reverend Harrison, supporting his release. (Reply 19–20, ECF No. 337; Reply Ex. A 66–75, ECF No. 337-1.)

And although the United States argued in its Opposition that Hardnett made a violent and threatening statement to a trial witness (*see* Reply 14), the United States recognized and conceded this submission as a factual error in its sur-reply.[20] (Sur-Reply 340). Nonetheless, the United States points to, and the Court acknowledges, that during the operation of his drug conspiracy, Hardnett used a razor to slice someone's hand and viciously beat a former girlfriend. (Sur-Reply 340.) To balance any concerns about public safety and Hardnett's ability to respect the law, the Court denies Hardnett's Motion to the extent that he requests a time-served sentence and seeks a supervised-release term of four years. (Mot. 5.)

---

[20] The witness in question submitted a letter on Hardnett's behalf. (Reply Ex. A 79–82, ECF No. 337-1.)

The Court also finds compelling two comments from Judge Spencer—the Judge who initially sentenced Hardnett—indicating he would impose a lower sentence if possible. In particular, Judge Spencer's written statement that if he had sentenced Hardnett in 2016, Hardnett would have received a "substantially lower sentence." (ECF No. 322.) In sum, after considering the various factors that the Court must assess when reaching the appropriate sentence, including any post-conviction mitigating conduct and aggravating conduct, *Martin*, 916 F.3d at 398, the Court finds nothing in Hardnett's record justifies the Court precluding relief under the First Step Act.

## IV. CONCLUSION

The Court GRANTS the United States' Motion for Leave to File Sur-Reply 19 Minutes Out of Time. (ECF No. 343.) The Court GRANTS the Motion, (ECF No. 335), and REDUCES Hardnett's sentence on each count to 300 months, running concurrently. The Court REDUCES Hardnett's term of supervised release for Count One from ten years to eight years. Hardnett's sentencing judgment SHALL otherwise remain unchanged.

The Clerk is directed to send a copy of this Memorandum Opinion to Hardnett at his address of record, all counsel of record, the United States Probation Office, and the United States Marshals Service, for delivery to the Bureau of Prisons.

It is SO ORDERED.

/s/

M. Hannah Lauck
United States District Judge

Date: Oct. 24, 2019
Richmond, Virginia

32