**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

**v.** **Criminal No. 3:03cr212**

**ALEXANDER JAMES HARDNETT,**

**Defendant.**

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Alexander James Hardnett's Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act (the "Motion"). (Mot. 1, ECF No. 354.) The United States responded in opposition, (the "Opposition"). (ECF No. 362.) Hardnett has not replied and the time to do so has expired. The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will grant the Motion and reduce Hardnett's sentence to time served.

## I. Background

On June 16, 2003, a Grand Jury indicted Hardnett and five others in a twenty-three-count indictment, charging them with various offenses related to a conspiracy to distribute crack cocaine in the Eastern District of Virginia. (PSR ¶¶ 1–2, ECF No. 350.) Within that indictment, the Grand Jury listed Hardnett in seven counts. The Court later dismissed on the United States' motions three of the seven counts that Hardnett faced. (ECF Nos. 76, 92.) Hardnett proceeded to trial on the four remaining counts: conspiracy to possess with intent to distribute 50 grams or more of cocaine base ("Count One"); possession with intent to distribute more than 500 grams of

a mixture containing cocaine hydrochloride ("Count Three"); possession with intent to distribute more than 50 grams of cocaine base ("Count Five"); and possession with intent to "distribute a quantity of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(C), which contained a detectable amount of cocaine base, commonly known as 'crack,' a Schedule II narcotic controlled substance" ("Count Six"). (Indictment, ECF No. 17.)

Pursuant to 21 U.S.C. § 851,[1] the United States filed a "Notice of Intention to Seek Sentencing Enhancement" before trial based on a prior drug crime Hardnett had committed, unrelated to the 2003 crack cocaine conspiracy charges.[2] (ECF No. 58.) In accordance with § 851, the prior conviction raised Hardnett's mandatory minimum sentence for Count One from 120 months to 240 months. After a bench trial, the Court found Hardnett not guilty of Counts Three and Five and guilty of Counts One and Six.

Following these convictions, a United States Probation Officer prepared a presentence report ("PSR") to help the Court determine the appropriate sentence. The PSR stated that the United States "recommended that [Hardnett] be held accountable for distributing in excess of 1.5 kilograms of cocaine base between late 1998 and December 2002." (PSR ¶ 32.) The PSR calculated for Hardnett an Offense Level of 46 and Criminal History Category VI. To make this calculation, the PSR used offense level 38 based on a drug weight in excess of 1.5 kilograms. (PSR Wkst. A); *see also* U.S. Sentencing Guidelines Manual §§ 2D1.1(a)(3), (c)(1), (c)(4) (U.S.

---

[1] A Section 851 enhancement increases the penalty that Courts must impose on a drug offender who has a previous conviction for a felony drug offense. *See* 21 U.S.C. §§ 841, 851.

[2] For the § 851 enhancement, the PSR stated that Hardnett was "convicted on June 22, 1993, of Attempted Criminal Possession of a Controlled Substance Third Degree in the Supreme Court for Queens County, New York." (PSR ¶ 19.) Hardnett committed that crime shortly after his eighteenth birthday—more than ten years prior to the underlying 2003 federal case. (PSR ¶ 47.) That offense constituted his only prior felony.

Sentencing Comm'n 2003) ("USSG") (specifying base offense levels in drug quantity table).[3] The PSR then added two offense levels for possession of a firearm, four levels for a supervisory role in the offense, and two levels for obstruction of justice, which resulted in an adjusted offense level of 46. (PSR ¶ 109, Wkst. A.)

At sentencing on February 12, 2004, the Court made findings with respect to Hardnett's possession of a firearm, obstruction of justice, and supervisory role in the conspiracy, and adopted the PSR. (Sent. Tr. 9–10, ECF No. 336-1.) These findings increased Hardnett's offense level from 32 (based on the conviction for conspiracy to distribute 50 grams or more of crack cocaine), resulting in a recommendation for a life sentence. The Court sentenced Hardnett to the mandatory term of life on Count One and 360 months (30 years) on Count Six, to run concurrently. (Sent. Tr. 12.) The Court further imposed a supervised release term of ten years for Count One and six years for Count Six, to run concurrently. (*Id.*)

Hardnett appealed. (ECF No. 130.) The United States Court of Appeals for the Fourth Circuit vacated Hardnett's sentence after finding that it violated "the rule announced in *United States v. Booker*, 543 U.S. 220 (2005)," which the Supreme Court of the United States decided after Hardnett's initial sentencing hearing. *United States v. Hardnett*, 124 F. App'x 767, 768 (4th Cir. 2005).

At the July 13, 2005 resentencing on remand—where a life sentence was no longer mandatory—the Court sentenced Hardnett to 396 months on Count One and 360 months on

[3] Based on the drug weight specified in the indictment (50 grams of cocaine base), the 2003 Guidelines placed Hardnett's base offense level at 32. USSG § 2D1.1(c)(4) (2003) (identifying offense level 32 for "[a]t least 50 G but less than 150 G of Cocaine Base"). Based on the drug weight specified in the PSR (1.5 kilograms of cocaine base), the 2003 Guidelines identified Hardnett's base offense level as 38. USSG § 2D1.1(c)(1) (2003) (identifying offense level 38 for "1.5KG or more of Cocaine Base").

Count Six. (ECF No. 179.) Looking to the 18 U.S.C. § 3553(a) sentencing factors, the Court considered mitigating evidence regarding Hardnett's traumatic childhood and Hardnett's positive involvement with his family. (July 13, 2005 Sent. Tr. 16; ECF No. 336-2.) Noting that a life sentence "is . . . the second most serious penalty that can be imposed short of the death penalty," the Court weighed whether Hardnett's crime warranted that serious federal penalty. (*Id.* 16–17.) United States District Judge James R. Spencer specifically stated that "if left to my own devices, would I have given Mr. Hardnett life? No." (*Id.*) Because of the serious nature of the crime, the Court then imposed a 396 month (33 years) sentence on Count One and a 360 month (30 years) sentence on Count Six. (*Id.* 17.)

Later, the Sentencing Commission reduced the Guidelines for Hardnett's offense. (ECF No. 259.) Specifically, Amendment 750 as set forth in Supplement to the 2010 Guidelines Manual (effective November 1, 2010), reduced the statutory penalties for cocaine base ("crack cocaine") offenses such as Hardnett's in Count One. (ECF Nos. 269, 282.) On Hardnett's motion, the Court reduced his sentence for Count One from 396 months to 360 months. (ECF No. 282.) Because of the drug weight attributed to Hardnett in Count One, however, the twenty-year mandatory minimum remained in effect. The 30-year sentence for Count Six did not change and the supervised release terms remained in place.

In 2016, during the Clemency Initiative that President Barack Obama authorized during his administration, *pro bono* Counsel reviewed Hardnett's case to determine whether he was eligible to seek clemency or other sentencing relief. (ECF No. 321.) As part of that request, *pro bono* Counsel compiled Hardnett's prison records, obtained several letters written on his behalf, documented pre-conviction and post-conviction mitigating evidence, and thoroughly analyzed

his criminal history points and evaluated how at that time, in 2016, certain criminal history points would no longer count against Hardnett in sentencing. (*Id*.)

After conducting this review, *pro bono* Counsel asked the Court and the United States Attorney's office to consider implementing a reduction of Hardnett's sentences in accordance with the procedure used in *Holloway v. United States*, 68 F. Supp. 3d 310 (E.D.N.Y 2014). On January 7, 2016, in response to that inquiry, Judge Spencer declined to follow the resentencing procedure used in *Holloway*, but added the following:

> Counsel, alternatively, seeks a statement from the Court that Mr. Hardnett would receive a substantially lower sentence today. The Court affirmatively responds to that inquiry. Yes, if Mr. Hardnett were sentenced today, he would receive a substantially lower sentence.

(ECF No. 322.) Hardnett did not receive a sentence reduction in accordance with the *Holloway* doctrine.

Most recently, in May 2019, Hardnett filed a Motion to Reduce Sentence Pursuant to § 404 of the First Step Act of 2018. (ECF No. 335.) Section 404 of the First Step Act reduced the applicable penalties for certain drug offenses involving cocaine base, or "crack" cocaine. *United States v. Gravatt*, 953 F.3d 258, 259 (4th Cir. 2020). The Court granted the motion and reduced Hardnett's sentence to 300 months' imprisonment on each count after concluding that "the drug weight in [his] indictment render[ed] him eligible for First Step Act relief" and analyzing the relevant § 3553(a) factors. *United States v. Hardnett*, 417 F. Supp. 3d 725, 743, 746 (E.D. Va. 2019).

On June 30, 2020, Hardnett filed the instant Motion, asking the Court "to grant him compassionate release under [S]ection 603(b) of the First Step Act (codified at 18 U.S.C.

§ 3582(c)(1)(A)) and order that the remainder of his sentence be served on home confinement."[4] (Mot. 1.) Hardnett contends that, as a 45-year-old, his prediabetes, high cholesterol, obesity, irregular heartbeat, and back pain, "in combination with the mortal risk" he faces "given the institution where he has been placed, constitutes an extraordinary and compelling reason warranting" his release.[5] (Mot. 21–22.) The United States opposes his request for compassionate release, arguing that: (1) Hardnett has not exhausted his administrative remedies (Opp'n 2, ECF No. 362); (2) Hardnett does not suffer serious health problems that would make him "particularly susceptible to COVID-19," (*id.* 14); and, (3) Hardnett's "criminal history demonstrates that [he] poses a clear risk to public safety, and reflects an individual unlikely to comply with the necessary protocols and considerations inherent in the ongoing response to the COVID-19 pandemic," (*id.* 18).

## **II. Legal Standard: Compassionate Release Under the First Step Act of 2018**

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act in 2018, the Bureau of Prisons ("BOP") had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020).

---

[4] The record reflects that Hardnett has served roughly seventeen and a half years in prison and is scheduled for release on May 29, 2024. (ECF No. 362-1.)

[5] The record shows that the Bureau of Prisons moved Hardnett in 2019 to Butner Low FCI "for a lesser security transfer." (ECF No. 362-1 at 3.) According to recent news reports, as many as 25 inmates have died while in federal custody in the Butner prison complex. *See* Justin Wm. Moyer & Neena Satija, *Frail inmates could be sent home to prevent the spread of covid-19. Instead, some are dying in federal prisons*, WASH. POST, Aug. 3, 2020, https://www.washingtonpost.com/local/public-safety/frail-inmates-could-be-sent-home-to-prevent-the-spread-of-covid-19-instead-some-are-dying-in-federal-prisons/2020/08/02/992fd484-b636-11ea-9b0f-c797548c1154_story.html.

Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction."[6] *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(A), 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

**A. Exhaustion of Administrative Remedies**

Although the Court generally cannot modify a term of imprisonment once it has been imposed, the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

---

[6] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–*3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020)).

Throughout the country, courts have found that the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, No. 16cr194, 2020 WL 1659880, at *1, *3 (S.D.N.Y. Apr. 3, 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, No. 17cr513-3, 2020 WL 1456422, at *3 (S.D.N.Y. Apr. 1, 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(A) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, Dkt. No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(C).[7] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15cr00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020);

---

[7] The United States Sentencing Commission Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

*United States v. Edwards*, 6:17cr00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Feiling*, 2020 WL 1821457, at *7 (citing *United States v. Clark*, No. 1785SDD, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

After finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A).

## III. Analysis

In the instant motion, Hardnett argues that his high risk of serious illness, were he to contract COVID-19, meets the standard for extraordinary and compelling reasons and justifies compassionate release. (*Id*. 21.) The Court finds that the circumstances present in this case together with the COVID-19 pandemic constitute extraordinary and compelling reasons to render Hardnett eligible for compassionate release.[8]

[8] The record does not make clear whether Hardnett has sufficiently exhausted his administrative remedies. (*See* ECF No. 354-1.) Hardnett included with his Motion a copy of an "Inmate Request to Staff" form, dated June 9, 2020, that he submitted to the Warden at his facility, in which he requests a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) because of his health concerns and COVID-19. (ECF No. 354-1.) In its Opposition, the United States avers that Hardnett's Progress Report from the BOP, dated June 5, 2020, did not show that Hardnett had "submitted a formal request for compassionate release to the Warden of his institution." (Opp'n 1 (citing BOP Progress Report, ECF No. 362-1).) The Inmate Request to Staff form that Hardnett submitted, however, lists a date four days after the issuance of the BOP Progress Report. Moreover, the June 5, 2020 BOP Progress Report states that "Hardnett submitted an 'Inmate Request to Staff' on 4-24-2020 requesting home confinement under the Care Act [sic], due to COVID-19. The Case Manager responded to inmate Hardnett letting him know that he did not meet the criteria on 4-24-20." (ECF No. 362-1 at 3.)

The Probation Officer's Recommendation regarding Compassionate Release, dated July 10, 2020, further states that Hardnett "has not followed the proper procedures with the Bureau of Prisons prior to filing the motion with the Court. In addition, he is not being considered for

Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added). Here, Hardnett asserts that he faces a particular vulnerability to coronavirus because of the conditions at Butner Low FCI, his age (45), and the fact that he suffers from prediabetes, high cholesterol, obesity, an irregular heartbeat, and back pain. (Mot. 21.) Hardnett argues these conditions create an extraordinary and compelling reason to grant compassionate release.

The Court first acknowledges the ongoing COVID-19 outbreak and concerning conditions at Butner Low FCI. As of August 26, 2020, the Bureau of Prisons has reported 617 COVID-19 cases among inmates at Butner Low FCI and 16 inmate deaths. Fed. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Aug. 26, 2020). The United States contends that Hardnett's medical records do not present any of the highest risk factors or concerns most associated with the virus. However, the medical records submitted in support of the Motion reflect a 45-year-old[9] individual who has elevated cholesterol, (ECF

---

home confinement under the CARES Act due to a history of violence." (Probation Recommendation, ECF No. 359.)

It appears that Hardnett has submitted two *informal* requests for compassionate release, both of which the Bureau of Prisons denied. Furthermore, it seems that the Bureau of Prisons would not consider Hardnett for release based on his record, thus further administrative appeals may prove futile. In any event, the Court waives the exhaustion requirement and turns to the merits of the pending Motion for Compassionate Release, given that further delay may result in prejudice to Hardnett. *Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3.

[9] The risk of severe illness from coronavirus increases appears to increase with age, and the United States Centers for Disease Control and Prevention ("CDC") warns that individuals who are 65 and older have a higher risk of severe illness. Centers for Disease Control & Prevention, *Older Adults*, CORONAVIRUS DISEASE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 10, 2020). The CDC has also reported that "[t]here is increasing evidence that some racial and ethnic minority groups are

No. 358 at 11), a body mass index of 28.6,[10] (*id.* at 23), the existence of an irregular heartbeat in previous checkups (*id.* at 6), radiculitis,[11] (*id.*), and back pain that requires him to be assigned to a lower bunk, (ECF No. 362-1 at 3).[12] The Court finds that considering Hardnett's age and health, together with the number of COVID-19 cases present at Butner Low FCI, present an "extraordinary and compelling" reason for his release. 18 U.S.C. § 3582(c)(1)(A).

Hardnett further contends that his motion for compassionate release should be granted because he has engaged in post-offense rehabilitation,[13] specifically that he completed

---

being disproportionately affected by COVID-19." Centers for Disease Control & Prevention, *Health Equity Considerations & Racial & Ethnic Minority Groups*, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Aug. 17, 2020).

[10] Persons are considered obese with a body mass index of 30 or more. *See* WebMD, *Weight Loss and Body Mass Index*, https://www.webmd.com/men/weight-loss-bmi (last visited Aug. 18, 2020).

[11] Radiculitis refers to pain that radiates along the nerve caused by inflammation at the root of its connection to the spinal column. As the condition gets worse, it is possible for certain muscles to get weaker. *See* Manchikanti, L., Cash, K. A., Pampati, V., Wargo, B. W., & Malla, Y. (2012). *Management of chronic pain of cervical disc herniation and radiculitis with fluoroscopic cervical interlaminar epidural injections*, Int'l J.of Med. Sci, 9(6), 424–34, https://doi.org/10.7150/ijms.4444.

[12] The CDC states that "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19," which includes chronic kidney disease, chronic obstructive pulmonary disease, obesity, serious heart conditions, and other serious medical conditions. Centers for Disease Control & Prevention, *People with Certain Medical Conditions*, CORONAVIRUS DISEASE, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Aug. 10, 2020) (emphasis omitted). The CDC further includes a list of conditions that might increase the risk of a person contracting a severe illness such as asthma, hypertension, liver disease, diabetes, and others. *Id.*

[13] In *United States v. Martin*, the Fourth Circuit vacated and remanded the District Court's denial of both Defendants' motions to reduce sentence because the District Court failed to address any new mitigating evidence when denying the motions. 916 F.3d 397–98. If an individual is eligible for a sentence reduction, the Court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *See id.* at 397.

educational classes and because he has a viable release plan. Hardnett displays significant progress in his rehabilitation, including his participation in educational programming and coursework offered through the Bureau of Prisons.[14] (Mot. 22–23.) In his seventeen years in prison, Hardnett has accumulated only three infractions (two for fighting the same inmate and one for refusing to comment), all of which occurred before 2007, thirteen years ago.

Hardnett proposes an adequate release plan. (Mot. 24.) Upon release, Hardnett "plans to live with his grandmother, Ruby Novillo, in Kinsale, Virginia." (*Id.*) Hardnett avers that he "will have space within the home to socially distance, with his own bedroom and bathroom." (*Id.*) He will also have the support and assistance of his cousins. This release plan supports granting relief.

Additionally, Hardnett has served the majority of his sentence. Hardnett has been incarcerated since his arrest in 2003. Therefore, Hardnett has served roughly 210 months in prison. He has less than four years (48 months) of incarceration remaining on his sentence. Thus, Hardnett has served roughly 80% of his prison term. District courts within the jurisdiction of the Fourth Circuit have considered the length of time served an important factor when ruling on motions for compassionate release during the COVID-19 pandemic. *See e.g.*, *United States v. Johnson*, No. JKB-14-356, 2020 WL 3316221, at *1 (D. Md. June 17, 2020) (granting compassionate release to a defendant "sentenced to a period of 102 months' imprisonment" who has a "current projected release date [of] October 2, 2020"); *United States v. Bright*,

[14] Hardnett previously provided information to the Court regarding his service as Events Coordinator for various events in prison, including the Residential Drug Abuse Program graduation ceremony. Hardnett assists Reverend James L. Harrison, a volunteer Minister at the prison, in conducting Bible Study Group every Saturday morning. Hardnett submitted copies of letters from four of his past supervisors, his education teacher, and Reverend Harrison, supporting his release. (Reply First Step Act Mot. 19–20, ECF No. 337; Reply First Step Act Mot. Ex. A 66–75, ECF No. 337-1.)

No. 2:15cr15-5, 2020 WL 2537508, at *2 (W.D. Va. May 19, 2020) (granting compassionate release to a defendant who "has served over 75 percent of his 84-month sentence"). For instance, in *United States v. Collins*, the district court, in granting compassionate release, acknowledged that doing so resulted in only a "relatively modest reduction" because the defendant "would be eligible for release from BOP custody in December 2020." No. CCB-10-336, 2020 WL 1506176, at *1–*2 (D. Md. Mar. 30, 2020). Likewise, this Court notes the importance of the amount of time Hardnett has already served. Hardnett's seventeen-and-a-half years of confinement reflects the seriousness of his offense, affords adequate deterrence for criminal conduct, and provides just punishment for his drug crime.

The Court also notes that the § 3553(a) factors further support granting Hardnett's request for compassionate release.[15] Hardnett's seventeen-plus years in prison, adequately deters criminal conduct, provides just punishment for his drug offense, has provided him with educational training, and has protected the public from further crimes. Hardnett's age, forty-five, indicates a decreased recidivism risk. As previously explained in *United States v. Hardnett*, 417

---

[15] Section 3553(a) provides, in relevant part:

> The court shall impose a sentence sufficient, but not greater than necessary . . . . The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[] . . . .

18 U.S.C. § 3553(a).

F. Supp. 3d at 744, Hardnett's criminal history, as calculated in the PSR, consisted of sixteen criminal history points: six of which pertain to driving without a license, one pertains to possession of marijuana (for which he paid a $50 fine), three pertain to attempted possession of cocaine (his sole prior felony), one for misdemeanor assault and battery, one pertains to possession of a firearm, and one pertains to criminal trespass in the third degree (which he committed as a juvenile). (PSR Wkst. C.) In addition, three criminal history points derive from committing these offenses while on probation, and an additional recency point resulted for committing the offenses within two years of his last conviction (for driving on a suspended license).[16] (*Id.*) Furthermore, the attempted possession of cocaine offense, which he committed when he was eighteen-years and one-month-old, added not only to his criminal history points but also served as the predicate drug offense for the § 851 enhancement.

In its Opposition, the United States points to, and the Court acknowledges, that during the operation of his drug conspiracy, Hardnett used a razor to slice someone's hand and viciously beat a former girlfriend. The Court acknowledges this serious violent conduct and gives it great weight while considering the instant Motion and the relevant § 3553(a) factors. But the Court also sees that Hardnett has served more than seventeen years for his offenses,[17] and that he still

---

[16] Under the current Guidelines, the "recency" point stemming from his conviction for driving without a license would no longer apply to Hardnett. USSG § 4A1.1(e) previously provided that one point should be added if the defendant committed the federal offense less than two years after release from imprisonment and was given two points under § 4A1.1(d). U.S. SENTENCING COMMISSION COMPUTATION OF "RECENCY" CRIMINAL HISTORY POINTS UNDER USSG § 4A1.1(E) 1 (2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2010/20100818_Recency_Report.pdf.

[17] Hardnett's co-conspirators received shorter sentences and are no longer incarcerated. *See* Fed. Bureau of Prisons Inmate Locator (searching names of co-conspirators). *See generally United States v. Honor*, *et al.*, No. 3:03-cr-212, Docket Sheet.

faces a supervised release term of eight years. The eight-year supervised release term will allow the Court to closely monitor Hardnett until he reaches the age of fifty-five.

Hardnett's criminal conduct was egregious. What has changed, however, is the environment where Hardnett is serving his sentence and the unforeseen risk of severe illness or death that accompanies COVID-19. Hardnett has also shown through his postconviction conduct that he has taken seriously his rehabilitation. Considering the current COVID-19 pandemic, the specific conditions where Hardnett remains housed in Butner (including the death of multiple inmates), and Hardnett's underlying health concerns and age, the Court finds compassionate release warranted here.

## IV. Conclusion

For the reasons explained above, the Court will grant the Motion. (ECF No. 354.) An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

M. Hannah Lauck
United States District Judge

Date: August 27, 2020
Richmond, Virginia